LUMMUS COTTON GIN SALES CO. v. FARMERS' CO-OP. GIN CO. et al.
(No. 7195.)

(Court of Civil Appeals of Texas. Dallas. May 1, 1915. Rehearing Denied May 29, 1915.)

1. EVIDENCE ☞397—PAROL EVIDENCE AFFECTING WRITINGS—CONTRACT.
A written contract cannot be varied, altered, or contradicted by parol except for fraud, accident, or mistake.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756–1765; Dec. Dig. ☞397.]

2. EVIDENCE ☞434—PAROL EVIDENCE AFFECTING WRITING—CONTRACT—FRAUD.
Where the agent of the seller represented in writing that he would guarantee that his machine would run cheaper than another kind, and agreed to insert that provision in the contract, and the contract was signed by the buyers with the understanding that it contained the guaranty, the agent's conduct amounted to fraud, so that parol evidence was admissible to show the real terms of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. ☞434.]

Appeal from District Court, Hill County; Norton B. Porter, Judge.

Action by the Lummus Cotton Gin Sales Company against the Farmers' Co-operative Gin Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

C. M. Smithdeal, of Dallas, for appellant. Collins & Cummings, of Hillsboro, and Morrow & Morrow, of Somerset, for appellees.

RAINEY, C. J. Appellant sued the Farmers' Co-operative Gin Company, J. C. Harper, A. M. Martin, J. M. Harrison, W. G. Hayes, Joe Buie, Tom Files, and Eb Johnson to recover $2,335.88 as liquidated damages for breach of a written contract. By amended petition appellant omitted the name of the Farmers' Co-operative Gin Company as a defendant, and pleaded against the other defendants. It alleged that the persons above named intended to organize and incorporate a gin company under the above name, and entered into a contract to purchase a certain gin outfit, which contract was signed "Farmers' Co-operative Gin Company, J. C. Harper, President, and A. M. Martin, Secretary," which was agreed to and authorized by the other parties mentioned; that said gin company was never incorporated, and the said defendants breached said contract by refusing to receive said gin outfit, whereby they became liable for damages. Appellees an-

swered, admitting that on May 3, 1913, they signed the contract sued on, and alleged that it contained the following language: "This contract is subject to the approval of the seller at its home office"—and that it was never approved and never became a binding contract. They also alleged that at the time the contract was signed appellant agreed in writing in connection therewith as follows: "We agree that our direct current outfit 8–80 A–B will run 45 cents cheaper per hour than Brush outfits with line shaft"—and that this was a part of the contract, but that appellant repudiated the same. They also alleged that the consideration which induced them to make the contract sued on was a promise upon the part of appellant to make the guaranty that said machinery would run 45 cents per hour cheaper than Brush outfits, and that at the time the contract was made, and as part of it, and as part of the consideration therefor, appellant agreed to give a bond in the sum of $10,000, binding it to carry into effect all the provisions of the contract; that appellant failed and refused to give such bond. Appellant in its supplemental petition specifically denied that the contract was never approved by the seller, and specifically denied all the other defensive allegations of the answer filed by appellees. The case was submitted to the jury on special issues, and on return of its findings judgment was entered for appellees and the appellant prosecutes this appeal.

The instrument sued on is in the nature of an order for the purchase of a certain gin outfit, and its execution was procured by one Chandler, who was the duly authorized agent of the appellant. At the time of the execution of said instrument, and as an inducement therefor, the said Chandler then and there represented to said defendants, "We agree that our direct current outfit 8–80 A–B will run 45 cents per hour cheaper than the Brush outfits with line shaft," which representation was reduced to writing on a separate piece of paper and signed by Agent Chandler, and the said Chandler then and there agreed that appellant would execute a bond in the sum of $10,000, guaranteeing said representations. The appellant executed a bond in the sum of $9,344, payable to the Farmers' Co-operative Gin Company, conditioned on the faithful performance of its contract in the delivery of certain machinery as per the contract, with certain provisions thereto, one of which, among others, was "that no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named, and that the obligation of the surety is, and shall be construed strictly as, one of suretyship only, shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior con-

sent, in writing, of the surety," said bond not containing a clause guaranteeing the representation made by Agent Chandler that "We agree that our direct current outfit 8–80 A–B will run 45 cents per hour cheaper than the Brush outfits with line shaft."

The order executed by appellees contained the following clauses:

"This contract is subject to the approval of the seller at its home office, and in case purchaser fails or refuses to accept or receive said machinery on arrival, or in any other way fails to comply with this contract, purchasers agree to pay the said seller 25 per cent. of the amount of this contract as stipulated and liquidated damages for breach of the contract, which amount is hereby agreed to as covering the extra expense of manufacture, solicitation, and salesmanship which the seller has incurred in connection with this contract."

Also:

"The machinery herein described is sold subject to the terms and conditions set forth in or printed upon this order, and it is specially agreed that there are no understandings, warranties, or agreements, either verbal, or written, or otherwise, other than as hereinbefore specifically set forth."

Soon after the giving of said order appellees changed the name of the Farmers' Co-operative Gin Company, which had never been incorporated, to that of Farmers' Electric Gin Company, and incorporated under the latter name. Some dissatisfaction arising with appellees about the order given to appellant, some correspondence resulted between them. Appellees on May 17, 1913, advised the appellant as follows:

"As president of the Farmers' Electric Gin Company, formerly the Farmers' Co-operative Gin Company, I hereby ratify the contract formerly made with you for gin machinery, which contract shall be considered complete when a bond for $10,000 for the faithful performance of said contract has been executed by said Lummus Cotton Gin Sales Company.
"[Signed] W. G. Hayes,
"Pres. Farmers' Electric Gin Co."

On May 27, 1913, appellant wrote to the Farmers' Electric Gin Company as follows:

"In accordance with your understanding with our Mr. W. D. Chandler, we are inclosing herewith contract bond with the Equitable Surety Company, guaranteeing the faithful performance of the contract entered into between this company and the Farmers' Electric Gin Company, the receipt of which bond by you makes complete our contract, and we take this opportunity to accept your order as tendered us, with the understanding that settlement papers are to be signed by Messrs. J. C. Harper, W. S. Hayes, and the other directors of your company, as individuals, as we understand that the papers for incorporation have not been issued. However, should you receive the incorporation papers in the meantime, this can be adjusted when the machinery arrives."

The court submitted three special issues as follows:

(1) "Did the plaintiffs agree to furnish to the defendants a bond guaranteeing as follows: 'We agree that our direct current outfit 8–80 A–B will run 45 cents cheaper per hour than Brush outfits with line shaft?'"

(2) "State whether or not the agreement, signed 'W. D. Chandler,' which is in the following language: 'We agree that our direct current outfit 8–80 A–B will run 45 cents cheaper per hour than Brush outfits with line shaft,' was part of the consideration which induced defendants to sign the order for machinery, which is described in plaintiff's petition and introduced in evidence before you?"

(3) "State whether or not plaintiffs accepted the order for machinery in the terms agreed to by defendants. If so, when was such acceptance, if any?"

In response to these issues the jury answered "Yes" to Nos. 1 and 2, and "No" to No. 3.

Appellant insists that, the instrument sued on being in writing, it cannot be contradicted or changed by parol, and that the matters pleaded by appellees in defense do not fall within the exception to the rule allowing parol evidence to change, alter, or contradict the instrument sued on; therefore the court erred in admitting such evidence, and consequently the verdict of the jury was wrong, and judgment should have been for appellant.

[1, 2] It certainly is a correct principle of law that a written contract cannot be varied, altered, or contradicted by parol, unless for fraud, accident, or mistake. Appellees plead the failure of appellant to execute a bond to guarantee the representation made by Chandler, "We agree that our direct current outfit 8–80 A–B will run 45 cents per hour cheaper than the Brush outfits with line shaft," in the following language:

"Defendants replead the matters set out in the next preceding paragraph hereof, and say that the said W. D. Chandler representing plaintiff did agree to the warranty and guaranty set out in defendants' answer and to the furnishing of the bond therein mentioned, and that said agreements were the consideration which induced the defendants to sign said contract, and said Chandler, as defendants believe and charge the fact to be, made said agreements without the intention of complying with the same, and fraudulently omitted the same from said contract, and that his conduct in so doing was fraudulent, and he being the agent of the plaintiff intrusted with the business of the plaintiff was affected by and participated in the said fraud, and by reason thereof is estopped to contend that a part of said contract is binding upon the defendants, and to repudiate the remainder thereof, and is estopped by said fraudulent act from claiming any of the benefits of said alleged contract."

There was no general or special exception leveled at this plea by the appellant, and the proof adduced sustains it. But the appellant complains of the action of the court for admitting said representation over its objections for various reasons, which are in effect that said representation was made before the instrument sued on was signed and delivered, that it varies the terms of the one sued on, that appellees did not plead it was a part of the contract and left out by mistake, accident, or fraud, and that it was not signed by appellant, but by appellant's agent in his individual capacity.

The evidence shows that on the night the instrument sued on was signed the appellees had held a conference in relation to their organization; that Chandler, the appellant's agent, was present and made the representa-

tions in regard to the bond and the outfit running cheaper than the Brush outfit, which representation, he wrote in a small book, signed it, and delivered it to one of the parties. This was done about 3 o'clock in the morning, some 30 or 40 minutes before the contract was signed up. One of the witnesses testified:

"Mr. Chandler agreed to put this writing into the contract. When we broke up that meeting, he read part of the contract, but didn't read it all, and we didn't vote on it that night, accepting the contract, after it was written, and when we got to the sidewalk I called his attention that he had left this out of the contract, that he had not put it in, and he said he would put it in, and I have never seen a contract with that in it, more than that other there. It was on this very morning that I agreed to purchase this machinery."

It was further shown that said representation was the consideration that moved and induced the appellees to sign the contract.

We think there was no error committed by the court in admitting said testimony. Chandler having made the representations pleaded and proven by appellees, and the evidence showing that appellees were induced to make said contract on the faith that said representations were to become a part thereof, the failure of Chandler to insert the same in said contract constituted such fraud on appellees as is sufficient to defeat appellant's cause of action. Gypsum Co. v. Shields, 106 S. W. 724, same case affirmed 101 Tex. 473, 108 S. W. 1165.

We think an affirmance of the judgment hinges upon the legality of the admission of this testimony, and therefore hold that the evidence supports the verdict and judgment, and consider it unnecesary to discuss the assignments· presented, further than has been done, and overrule them all, and affirm the judgment.

Affirmed.